# IN THE MATTER OF THE APPLICATION OF TOME TANNO FOR A WRIT OF HABEAS CORPUS.

## June 2, 1913.

1. *Immigration—Alien immigrant, fiancee of domiciled alien:* A woman, resident of a foreign country, with whom a domiciled alien has entered into an agreement to marry upon her arrival, is not a "non-immigrant" alien, but is subject to the provisions of the immigration act, 34 Stat. 898.,

2. *Same—Finding of immigration officers, finality of:* The finding of a board of special inquiry of the immigration service that a woman has admitted the commission of an offense involving moral turpitude, within section 2 of the immigration act, cannot be set aside, so long as the finding is based on a fair hearing, and no abuse of authority, or mistake of law, appears.

3. *Same—Exclusion of alien for commission of crime—Adultery:* The commission of adultery is a ground of deportation under section 2 of the immigration act, this being an offense "involving moral turpitude."

4. *Statutes—Foreign law—Evidence—Presumption of continuity:* When under the law of a foreign state adultery is shown by a decision of its highest court to have been a crime in 1903, it will be presumed that it continued to be a crime there in 1905.

*Habeas corpus*:   Demurrer to respondent's return.

*J. Lightfoot* for petitioner.
*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

CLEMONS, J.    This case is before the court on petitioner's demurrer to respondent's return to a writ of habeas corpus, from which return it appears that the respondent as United States immigration inspector at the port of Honolulu, holds the petitioner, an alien (Japanese) female as deportable, pursuant to the finding of a board of special inquiry, for commission of a crime or misdemeanor involving moral turpitude and for admission of guilt of such misconduct, to-wit, in the finding of the board, the "living for

several years with a man not her husband in open and notorious adultery." The return, dated April 14th, 1913, also shows the petitioner to have, on March 10th, 1913, waived her right of appeal from the board's decision, and to have at no time since then taken an appeal. See *In re Yim Kwock Leong,* 1 U. S. Dist. Ct. Haw. (Estee) 66; *In re Koon Ko,* 3 U. S. Dist. Ct. Haw. 623, 625. This failure to appeal, admitted by the demurrer, would alone, suffice to dispose of the case, apart from the substantial points hereinafter discussed. *In re Young Chow Yee,* ante, p. 241. [In the traverse to the return, later filed, the allegation of failure to appeal was denied, and that denial was not contested by the respondent.]

The return exhibits a transcript of the proceedings before the board. The only direct evidence shown thereby from which a conclusion could be drawn, of an admission of guilt of a crime or misdemeanor involving moral turpitude, is her own testimony that, having left her husband for his failure to provide sufficient food for herself and small child, she went from Hawaii to a "saw-mill" village near Seattle, with a man whom she characterized as "her sweetheart at that time" and who paid her transportation, and there *lived with him* for two years and two months *"the same as if she were his wife,"*—he working in the saw mill and she washing clothes for Japanese and American laborers in the small village of about one hundred people, mostly of her own race, circumstances more or less relevant to the question of the notoriety of their relations. Her sweetheart thereafter paid her passage back to Japan, where she was divorced from her husband. And she now returns to Hawaii as a "picture bride," i. e., a woman engaged by correspondence for a marriage to take place upon her admission to this country. The board had at first some suspicion that the petitioner might be identical with a woman deported from Seattle as a prostitute,

but could not ascertain the fact, and did not base their decision on such suspicion.

[1] The petitioner by her attorney (brief on demurrer) disclaims any domicil here by reason of her former residence, "since it is not claimed that she left with the intention of returning or that she has maintained her domicil" in Hawaii, but submits that since, as is a fact, her present husband is domiciled here, it follows that this is her domicil also, and so she does not come within the class of immigrant aliens.

The contention is unwarranted. It does not appear that the immigrant is married to a domiciled alien. On the contrary, according to the woman's testimony before the immigration inspector, her marriage to such an alien was only "by correspondence." The court recognizes no such marriage. The most that could be said of the transaction is that it is merely an unconsummated agreement to marry upon landing.

[2] It is also contended that the words of her testimony above set forth "do not amount to an admission of having committed the crime of adultery."

A case in which a woman is held to have admitted the commission of a crime involving moral turpitude, merely by saying that she had "lived with" a man to whom she was not married, "the same as if she were his wife," may seem close to the border-line of a fair hearing of the facts in evidence; but yet, even under this contention, it would be clearly one of those cases characterized by Justice Holmes as of mere erroneous judgment of a tribunal having jurisdiction and not to be upset by another tribunal of even higher grade, or whose judgment may be better. *Chin Yow v. United States,* 208 U. S. 8, 13. The words by which she described her relations with this man, have in common usage such a well known meaning of sharing bed as well as board, that I cannot say that they did not as here spoken of a "sweetheart" not her husband, under all the circumstances

including that of the witnesses' demeanor (which cannot be viewed by me), fairly convey a meretricious meaning. The proceding before the immigration officers, being a civil rather than a criminal one, it might·be said,—though it is not necessary for me to go that far,—that, under the circumstances, this woman was called upon to give these words of her own choice any other innocent sense, of living with her "sweetheart" as housekeeper, nurse, or otherwise in a wifely capacity outside of the sharing of his bed. But my ruling is placed on more solid ground.

The hearing accorded to the immigrant was fair, no abuse of authority or mistake of law is apparent; therefore the decision thereupon cannot be set aside. *United States v. Ju Toy,* 198 U. S. 253; *Chin Yow v. United States,* 208 U. S. 8; *Tang Tun v. Edsell,* 223 U. S. 673; *In re Chop Tin,* 2 U..S. Dist. Ct. Haw. 153; *In re Pang Kun,* Id. 192; *In re Nakashima,* 3 Id. 168, 176; *In re Su Yen Hoon,* Id. 606; *In re Koon Ko,* Id. 623.

[3.] And, finally, it is contended, that even if there is "an admission of an adulterous relation" between the petitioner and her former "sweetheart," "that is not the admission of a crime involving moral turpitude within the meaning of the immigration laws,"—there being emphasized· incident-- ally the fact of her former husband's negligence and failure to provide for herself and child, "compelling her to seek . . . necessaries of life by wrongdoing," the fact that it is difficult for a woman with young child to obtain em- ployment, and the fact that her relations, whatever they may have· been, with her former sweetheart, "were termi- nated and the woman is now honorably married to a man able to supply her with the necessaries of life," whom she now seeks to join here.

Whether the woman's wrongdoing be adultery, no dis- cussion should be necessary to establish to the mind of anyone of moral sense, according to standards to which social policy can admit no exceptions, that her questioned

act was one of moral turpitude. See *Pollard v. Lyon,* 92 U. S. 225, 228; also *United States v. Bitty,* 208 U. S. 393, 401; *United States v. Uhl,* 203 Fed. 152, 154; *Gomes v. Hawaiian Gazette Co.,* 10 Haw. 108, 111. But the statute is directed only against *"a felony, or other crime or misdemeanor* involving moral turpitude." 34 Stat. 898, sec. 2. And, of course, if the admitted act was criminal, it must, we will assume for the purposes of this case at least, have been so by virtue of the law of the place where committed, i. e., the State of Washington; for neither adultery nor fornication were indictable at common law, unless by reasons of such openness and notoriety as effected a public nuisance. *Com. v. Putnam,* 1 Pick. 136, 140. *State v. Lash,* 16 N. J. L. 280, 284, 32 Am. Dec. 397, 398; 1 Bishop, N. Cr. L., sec. 38; 2 Enc. L. & P. 273-274; 1 Cyc. 952; 1 A. & E. Enc. L. 2d ed. 747; 19 Cyc. 1434-1435; 13 A. & E. Enc. L. 2d ed. 1119.

[4] And it seems that these offenses are criminal under the statutes of that State. At least, adultery was a crime under the Code of 1881, sec. 944, Huntley's Penal Code (1893), sec. 2374, 2 Hill's Ann. Stats. (1891), 705, sec. 193; though, apparently, fornication was not, unless open and notorious (as was the character of the act here: finding of board), Huntley's Penal Code (1893) sec. 2378; 2 Hill's Ann. Stats. (1891) 705, sec. 192. Such I shall assume to have continued to be the law of Washington on May 15, 1905, when this woman went to Seattle and for the two years and two months thereafter when she "lived with" her "sweetheart" in that vicinity,—in view of the case of *State v. Nelson,* 39 Wash. 221, 81 Pac. 721, decided on July 18, 1905, one month after she began "living" with this man as his "wife." This decision, involving an offense committed in 1903, and that of *State v. Keith,* 48 Wash. 77, 92 Pac. 893, rendered in December, 1907, but not giving the date of the offense involved, both refer to Ballinger's Annotated Codes and Statutes, defining adultery and fixing its

punishment as a crime.   In the absence of a complete set of the statutes covering the period in question, the presumption of continuity, or the inference against change, may be applied.   2 Chamberlayne, Ev., sec. 1030; 4 Wigmore, Ev., sec. 2530; Jones, Ev., 2d ed., sec. 58.

Let the demurrer to the return be overruled.   The petitioner may have one week within which to file traverse to the return.